**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

STEVEN A. KING,
Plaintiff-Appellant,

v.

INTERNATIONAL BUSINESS MACHINES
CORPORATION,
Defendant-Appellee.

No. 95-2528

Appeal from the United States District Court
for the Eastern District of Virginia, at Alexandria.
Claude M. Hilton, District Judge.
(CA-95-271-A)

Argued: May 9, 1996

Decided: June 19, 1996

Before MURNAGHAN and WILLIAMS, Circuit Judges, and
PHILLIPS, Senior Circuit Judge.

_____

Affirmed by unpublished per curiam opinion.

_____

**COUNSEL**

**ARGUED:** Jack L. Gould, Fairfax, Virginia, for Appellant. Anthony
Herman, COVINGTON & BURLING, Washington, D.C., for Appel-
lee. **ON BRIEF:** Eric Lasker, COVINGTON & BURLING, Wash-
ington, D.C.; Melinda Hunkins, IBM CORPORATION, Bethesda,
Maryland, for Appellee.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

Appellant Steven A. King appeals a ruling of the district court granting summary judgment to Appellee International Business Machines Corporation (IBM) on King's various claims related to an alleged promise of employment by IBM. Finding no error, we affirm.

King was a longtime, at-will employee of IBM's Federal Systems Company division (FSC) in Manassas, Virginia. In 1991, King accepted a temporary, international assignment to FSC's Merlin Program in England. Before accepting the international assignment, King attended a briefing, during which he was informed that he would be re-entered into IBM's domestic workforce at the conclusion of his international assignment and that a "career manager" would be designated to assist him with the re-entry process. After he began work in England, King signed an "international assignment letter" that explained the terms of King's assignment to England. One portion of the letter addressed the conclusion of King's international assignment:

> International assignments are temporary in nature. The length of your assignment is based on present business requirements and is subject to change at the discretion of IBM. <u>You are expected to re-enter your home country at the completion of your assignment or any extension.</u>

(J.A. at 206 (emphasis added).)

While King was in England, IBM sold FSC to another company, Loral. Pursuant to its agreement with IBM, Loral offered employment to King and all other FSC employees under the same terms those employees had enjoyed with IBM. Although IBM informed King that

2

it would not employ him upon his return from England, King nevertheless declined the offer of employment with Loral.*

King then brought the instant action, alleging breach of contract, fraud, and civil conspiracy. All of these claims are dependent on the validity of King's assertion that IBM's oral and written representations that it "expected" to re-employ King upon the completion of his international assignment constituted a contract that bound IBM to offer King employment when he declined Loral's offer of employment. After a hearing on IBM's summary judgment motion, the district court concluded that IBM had not made a promise of employment. Having had the benefit of oral argument and the parties' briefs, and after careful consideration of the record and applicable law, we conclude that the district court correctly determined that IBM made no promise of employment to King. Accordingly, we affirm.

AFFIRMED

_____
*Pursuant to the terms of the international assignment letter, IBM paid to transport King, his family, and their belongings back to the United States.

3